## Gould Estate

*Milton Apfelbaum,* for accountant.

MacElree, P. J., July 18, 1967.— . . . Decedent, a married man, leaving to survive him a spouse and no issue, died March 26, 1966, leaving a will dated April 13, 1959, which was duly probated and upon which letters testamentary were granted April 12, 1966.

By the terms of his will, decedent provided, inter alia, as follows:

"All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath to the National Bank of Chester Valley, as Trustee, to be added to and become a part of, and to be administered as part of, the trust property in accordance with the provisions of the Trust Agreement, dated April 13, 1959, between myself, as Grantor, and The National Bank of Chester Valley, as Trustee, or in the event of the prior death of Mabel Y. Gould, to be disposed of as therein set forth".

The question to be determined by this court, as stated in the petition for adjudication and statement of proposed distribution, is as follows:

"The question involved is whether decedent's estate is to be administered in accordance with the provi-

sions of the Trust Agreement, dated February 20, 1961, or whether an intestacy has resulted because while the Will refers to a Trust Agreement between testator and The National Bank of Chester Valley, the specific agreement referred to (April 13, 1959) was replaced by a new agreement dated February 20, 1961".

Under the terms of the trust indenture of April 13, 1959, decedent, as settlor (referred to in the trust indenture as grantor), reserved the right at any time or from time to time, without the consent of any person, and without notice to any person other than the trustee, to revoke or modify the trust created in whole or in part, to change the beneficiaries, or to withdraw the whole or any part of the trust estate by filing notice of such revocation, modification, change or withdrawal with the trustee.

Had decedent seen fit to avail himself of the reserved right to modify the trust created in whole or in part, or to change the beneficiaries thereof by amendment of the first trust indenture, the question would be easily resolved.

This court is of opinion that the primary question for it to decide is whether the execution of the trust agreement of February 20, 1961, constituted a revocation of the trust agreement of April 13, 1959, with the result that the trust agreement of April 13, 1959, was revoked and rendered inoperative as to that portion of decedent's estate passing under the will of decedent.

Counsel for the accountant, who was the scrivener of both trust agreements, as well as of decedent's will, concedes that the problem has arisen because of his failure to change the beneficiaries by amendment to the original trust agreement, rather than by preparing a new trust agreement; but having prepared such

new trust agreement, also by failing to change the grantor's will to conform thereto.

Counsel for the accountant vigorously contends that such an oversight on his part should not be permitted to defeat the intention of the testator. . . .

It is clear to this court that by the terms of his will, decedent, having no issue or adopted children, intended to make thoughtful provision for the maintenance and care of his wife (who was an invalid), and, by a trust instrument, relieve her of the burden of conducting financial affairs.

It is equally clear that he intended that, at the death of his wife, such trust, to which his estate would be added, should terminate and the principal should be paid to certain named relatives and charities, reserving the right to modify in whole or in part their identity, and to change the beneficiaries thereof.

If, through admitted oversight of his counsel, he did so by the creation of a new trust instrument making only such changes, rather than by technically amending the existing instrument, such action should not in good conscience thwart the plan of distribution intended by decedent through no fault of his.

This court believes that the instrument of February 20, 1961, should be construed as a modification under a right reserved of the trust agreement of April 13, 1959, and a slight change in the beneficiaries named therein, and distribution will be awarded accordingly.

## CONCLUSIONS OF LAW

Under the facts as stated, this court concludes that the net balance for distribution should and will be awarded to the National Bank of Chester Valley, trustee under the trust agreement of April 13, 1959, as modified by the trust agreement of February 20, 1961. . . .